IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEMTOV MICHTAVI, | : | No.  4:07-CV-0628 |
| Plaintiff | : | |
| | : | Judge Jones |
| v. | : | |
| | : | Magistrate Judge Blewitt |
| UNITED STATES OF AMERICA | : | |
| Defendant | : | |

## MEMORANDUM

March 4, 2009

This matter is before the Court on the Report and Recommendation of

Magistrate Judge Thomas M. Blewitt (Doc. 62) which recommends that the Motion

to Dismiss (Doc. 54) of the defendant United States be granted and plaintiff

Shemtov Michtavi's Second Amended Complaint be dismissed.  Michtavi has filed

objections to the Report and Recommendation (Doc. 65), to which the United

States filed an opposition (Doc. 66).  For the reasons set forth below, the Court will

adopt the Magistrate Judge's recommendation, and, although for slightly different

reasons, will dismiss Michtavi's complaint.

## I.    STANDARDS OF REVIEW

### A.    Objections to Magistrate Judge's Report

When, as here, objections are filed to the report of a magistrate judge, the

district court makes a *de novo* determination of those portions of the report or the

proposed findings or recommendations to which objections are made.  28 U.S.C. §

636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980).  Under this

standard, a court may accept, reject, or modify, in whole or in part, the magistrate

judge's findings or recommendations.  *Id.*  Although the standard of review is *de

novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the

exercise of sound discretion, chooses to place on a magistrate judge's proposed

findings and recommendations.  *Raddatz*, 447 U.S. at 674-75; *see also Mathews v.

Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B.     Motion to Dismiss

The United States moves to dismiss the complaint under Fed. R. Civ. P.

12(b)(1) and 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(1),

a court must distinguish between facial and factual challenges to its subject matter

jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d

Cir. 1977).  A facial attack challenges whether the plaintiff has properly pled

jurisdiction.  *Id.*  "In reviewing a facial attack, the court must only consider the

allegations of the complaint and documents referenced therein and attached thereto,

in the light most favorable to the plaintiff."  *Gould Elecs., Inc. v. United States*,

220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen*, 549 F.2d at 891).  A factual

attack, in contrast, challenges jurisdiction based on facts apart from the pleadings.

*Mortensen*, 549 F.2d at 891.  "When a defendant attacks subject matter jurisdiction 'in fact,' ... the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case.  In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"  *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).  In this case, the United States' assertion that the Court lacks subject matter jurisdiction over certain of Michtavi's claims raises a factual challenge.

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965, 1969 n.8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8). Rule 8

"does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *Id.* at 234.

## II.   BACKGROUND

The factual background and procedural history of this action are comprehensively set forth in the Report and Recommendation and the Court's earlier opinions in this case, and because the Court writes only for the parties, we set forth below, in accordance with the above standards of review, only the background necessary to the disposition of the present motion to dismiss.

The sole claim asserted in this action is Michtavi's claim against the United States under the Federal Tort Claims Act ("FTCA") as stated in his Second Amended Complaint.  The essential allegations of Michtavi's complaint are that the United States, through its employees in the BOP, failed to prevent the loss of property and depression sustained as a result of fellow inmates' attempts to con him.

Specifically, Michtavi, an inmate at the Allenwood Low Security Correctional Institution, alleges that two inmates conspired to steal his legal papers "so they could formulate a false crime allegedly to be committed by" Michtavi, and then offer to testify against Michtavi in exchange for a reduction in their sentences.

(Doc. 52 at ¶ 12.)  However, one of the inmates "had a change of heart" and revealed the plan to Michtavi, who informed prison officials of the scheme.  (*Id.*)  The inmate who stole Michtavi's legal papers was placed in the SHU, and a few months later, the other inmate who had informed Michtavi of the scheme was transferred to another facility.  (*Id.* at ¶ 13.)

Michtavi asserts, however, that he quickly fell prey to another scheme.  He alleges yet another inmate informed him that the inmate's mother could help Michtavi fight his criminal conviction if Michtavi sent her money to pay for an inexpensive attorney.  (*Id.* at ¶ 14.)  Michtavi states that he "fell for this scam" and had his family send money to the inmate's mother.  (*Id.* at ¶ 15.)  He also alleges that this inmate too planned to steal his legal papers "in order to fabricate false criminal activity, and then 'play hero' by exposing the same to the U.S. Attorney's office and to the Federal Bureau of Investigation (FBI) in exchange for a reduction in this inmate's own sentence."[1]  (*Id.*)  Michtavi learned of this inmate's schemes through another prisoner, and informed prison officials.  (*Id.* at ¶¶ 16-18.)  Michtavi alleges that in response prison officials did not institute an investigation but rather accused him of wrongdoing.  (*Id.* at ¶ 18.)  Nevertheless, Michtavi

---

[1] Michtavi never identifies the criminal offense so many other inmates thought they could frame him for using his "legal papers."

concedes that prison officials conducted a search of the inmate's cell, confiscated Michtavi's legal papers from the inmate, and returned them to Michtavi.  (*Id.* at ¶ 19.)  Michtavi asserts, however, that the mere fact that his papers made it into the inmate's cell demonstrates "some kind of either funny business or just plain incompetence" on the part of prison officials, and alleges that certain officials were conspiring to violate his constitutional rights.  (*Id.* at ¶¶ 19-20.)  Separately, Michtavi alleges without elaboration that certain prison officials violated his Eighth Amendment right against the infliction of cruel and unusual punishment. (*Id.* at ¶ 21.)

Michtavi alleges that "[t]he employees of Defendant United States intentionally inflicted and negligently inflicted emotional distress upon [him] to such a degree that [he] has been required to take the prescription medication 'Prozac' on a daily basis to treat these harms inflicted by Defendant United States' employees."  (*Id.* at ¶ 22.)  Similarly, Michtavi alleges that "the employees of Defendant United States inflicted actual harm, inflicted pain and suffering and inflicted mental and emotional distress to such a degree that [he] still must to this very day take dosages of the prescription medication 'Prozac.'"  (*Id.* at ¶ 23.)

As relief, Michtavi requests an order prohibiting the retaliation against him, compensatory damages, and punitive damages.  (*See id.* at ¶¶ 24-26.)

## III.   DISCUSSION

### A.   Property Claims

The Magistrate Judge found that, to the extent Michtavi's FTCA claim is based on the loss of property, the Court lacks jurisdiction over such a claim under 28 U.S.C. § 2680(c) which exempts from FTCA liability "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer."  (Doc. 62 at 16-19.)  *See Gibson v. Sadowski*, 2009 WL 205632, at *1 (3d Cir. Jan. 29, 2009).  Michtavi concedes that the United States has not waived sovereign immunity for his property claims.  (Doc. 65 at 6.) Therefore, any such claims will be dismissed for lack of subject matter jurisdiction.

### B.   Punitive Damages

The Magistrate Judge found (Doc. 62 at 12), and Michtavi concedes (Doc. 59 at 7), that punitive damages are not recoverable under the FTCA.  *See* 28 U.S.C. § 2674 ("The United States ... shall not be liable ... for punitive damages."). Therefore, Michtavi's request for punitive damages will be stricken.

### C.    Eighth Amendment and Conspiracy Claims

As noted above, in his second amended complaint, Michtavi states that prison officials conspired to violate his constitutional rights and violated his Eighth Amendment rights, but does not assert separate Eighth Amendment or constitutional conspiracy claims.  (*See* Doc. 52 ¶¶ 8, 21-23.)  The Magistrate Judge construed the second amended complaint as asserting Eighth Amendment and conspiracy claims, and correctly noted that such claims were previously dismissed by the Court.  (Doc. 62 at 11, 12-15.)

In his objections to the report and recommendation, Michtavi argues that he is not re-asserting his constitutional claims but includes these assertions as factual background to his FTCA claim.  (Doc. 65 at 6.)  To this extent, their inclusion in the second amended complaint is entirely proper.  However, Michtavi also professes some confusion about the status of his Eighth Amendment and conspiracy claim, argues that the dismissal of such claims was error, and further argues that he should be allowed to re-assert such claims in a "parallel" amended complaint.  To the extent Michtavi means to seek reconsideration of the Court's dismissal of his constitutional claims, he has not set forth any sufficient basis for reconsideration.  See *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (holding reconsideration may granted only upon showing of an intervening

change in the controlling law;  the availability of new evidence that was not

previously available; or the need to correct a clear error of law or fact or to prevent

manifest injustice).  To the extent Michtavi is confused as to the status of his

Eighth Amendment and conspiracy claims, the Court will clarify:  these claims

were dismissed because, even assuming that his factual allegations were true, those

facts were not sufficient to establish a violation of the Eighth Amendment

prohibition against cruel and unusual punishment or a conspiracy to violate his

constitutional rights.  (*See* Doc. 20 at 11-15, 20-22.)  Because the facts asserted by

Mitchavi do not establish an Eighth Amendment or conspiracy claim, he is

precluded from re-asserting the same claims based on those facts.  *See ACLU v.*

*Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) ("Under the law-of-the-case doctrine,

when a court decides upon a rule of law, that decision should continue to govern

the same issues in subsequent stages in the same case.").  To the extent Michtavi

wishes to argue that the Court's dismissal of his claims was in error, he may do so

on appeal.

### D.      FTCA Claim

#### 1.      Physical Injury

The United States' waiver of sovereign immunity under 28 U.S.C. §

1346(b)(1) of the FTCA "allows plaintiffs to bring claims based on the action of

Government employees when private persons engaging in analogous behavior would be liable under state law." *CNA v. United States*, 535 F.3d 132, 138 (3d Cir. 2008).  However, this waiver of sovereign immunity is subject to several requirements and limitations.  *See id.*  One of these limitations is found in § 1346(b)(2), which provides:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. §  1346(b)(2).[2]  This section requires a showing of less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allowing the successful pleading of an emotional injury.  *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).

The Magistrate Judge found that Michtavi had made a sufficient showing of prior physical injury based on his allegation of "some unstated severe mental impairment requiring Prozac."  (Doc. 62 at 20.)  The Court disagrees with this

---

[2] Similarly, Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), also predicates a prisoner's claim for mental or emotional injury suffered while in custody on a showing of accompanying physical injury.  *See* 42 U.S.C. §  1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").  Given the similarities between § 1346(b)(2) and § 1997e(e), and given that the PLRA also applies to Michtavi's claims, the Court will rely upon cases interpreting either statute.  *See Perez v. United States*, 271 Fed. Appx. 240, 242 (3d Cir. 2008).

conclusion and holds that Michtavi has not alleged any prior physical injury that would allow him to recover damages for his alleged mental or emotional injuries.

Michtavi does not assert that either the inmates who allegedly plotted against him or the prison officials who allegedly failed to prevent such schemes physically harmed him in any way.  He alleges that the inmates stole his legal papers, attempted to frame him, and conned him out of money.  He alleges that the prison officials were complicit or negligent in allowing these wrongdoings to occur and failed to adequately investigate.  As a result these non-physical acts, Michtavi alleges only mental or emotional injury.  He asserts that prison officials "inflicted *emotional* distress" upon him, "inflicted *pain and suffering* and inflicted *mental and emotional* distress" such that he must take Prozac.  (Doc. 52 at ¶¶ 22-23.) These are explicitly allegations of non-physical injury.  In fact, in his brief in opposition to the United States' motion to dismiss, Michtavi implicitly concedes that he cannot meet the requirement of § 1346(b)(2) by arguing, not that he has sustained any physical injury, but that § 1346(b)(2) is unconstitutional.[3]  (Doc. 59 at 5.)

---

[3] The Third Circuit has suggested, and other courts have found, that the physical injury requirement is not unconstitutional. *See Allah v. Al-Hafeez*, 226 F.3d 247, 252 n.5 (3d Cir. 2000); *see also Thompson v. Carter*, 284 F.3d 411, 418-19 (2d Cir. 2002) (collecting cases).

The fact that Michtavi's mental condition is treated with medication does not mean these emotional problems are physical injury.  Prozac, the medication which Michtavi complains he is required to take, is a psychotropic drug used to treat mental conditions such as depression, obsessive compulsive disorder, bulimia nervosa, panic disorder, and premenstrual dysphoric disorder by selectively preventing serotonin reuptake.[4]  But the fact that Michtavi physically takes medication, or that the medication works on his physical body, does not mean that the medication is treating physical injury.  The depression and stress of which Michtavi complains are precisely the types of mental and emotional injuries which § 1346(b)(2) precludes as the basis for an FTCA claim without a showing of prior physical injury.  *See, e.g. Brooks v. Smith*, C.A. 3:04-CV-2680, 2007 WL 3275266, at *2 (M.D. Pa. Nov. 6, 2007) (holding that prisoner suffered headaches from the stress of his confinement did not meet physical injury requirement; collecting cases); *Smith v. Carroll*, C.A. No. 05-139, 2006 WL 1338825, at *2 (D. Del. May 16, 2006) (holding prisoner's claims seeking damages for stress, depression and mental illness and compensation for pain and suffering barred by physical injury

---

[4] *See* Prescribing Information, Prozac Label, 2006, available at U.S. Food & Drug Admin., http://www.fda.gov/cder/foi/label/2006/018936s076lbl.pdf; National Institute of Mental Health, "Medications", at 16, 20, available at http://www.nimh.nih.gov/health/publications/medications/medications.pdf; Stedmans Medical Dictionary,  "fluoxetine hydrochloride" (27th ed. 2000); Mayo Clinic, "Fluoxetine (Oral Route)", available at http://www.mayoclinic.com/health/drug-information/DR600689.

13

requirement); *Cloud v. Goldberg*, C.A. No. 98-4250, 2000 WL 157159, at *5 (E.D.

Pa. Feb. 14, 2000) (holding that prisoner's allegation that failure to treat his

medical condition resulted in "depression, insomnia, and just being in a scary

frame of mind" did not satisfy physical injury requirement).  Michtavi has made no

allegation whatsoever of physical injury, and therefore, his FTCA claim must be

dismissed.

### 2.    Intentional Infliction of Emotional Distress

Even assuming that Michtavi met the physical injury requirement of §

1346(b)(2), he has not stated an FTCA claim.  Although the FTCA provides a

means for plaintiffs to sue the United States in federal court, "[t]he cause of action

in an FTCA claim ... must come from state tort law."  *CNA*, 535 F.3d at 141 (citing

*FDIC v. Meyer*, 510 U.S. 471, 478 (1994)).  Michtavi asserts two potential state-

law causes of action:  intentional infliction of emotional distress and negligent

infliction of emotional distress.  Michtavi has failed to state a claim under either

theory.

First, as to Michtavi's intentional infliction of emotional distress claim, the

Magistrate Judge found that this claim is barred by the intentional tort exception to

the FTCA found in 28 U.S.C. § 2680(h).  (Doc. 62 at 11.)  The Court disagrees.[5]

"Claims stemming from intentional torts generally are excluded from the

Government's waiver of sovereign immunity under 28 U.S.C. § 2680(h)."  *Id.* at

148.  Specifically, that section provides that the FTCA's waiver of sovereign

immunity does not apply to "[a]ny claim arising out of assault, battery, false

imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

misrepresentation, deceit, or interference with contract rights."  28 U.S.C. §

2680(h).  Intentional infliction of emotional distress is not listed in § 2680(h), but

courts have found such a claim barred by § 2680(h), where the claim "arises out

of" or is based on conduct enumerated in that section.  *See, e.g.*, *Gay v. Garvey*,

C.A. No. 03-CV-01485, 2004 WL 2203730, at *1 n.3 (E.D. Pa. Sept. 30, 2004);

*Borawski v. Henderson*, 265 F. Supp. 2d 475, 484 (D.N.J. 2003); *Prybyszewski v.

City of Philadelphia*, C.A. No. 89-7024, 1990 WL 2800, at *3 (E.D. Pa. Jan. 16,

1990); *see also Gonzalez-Jiminez De Ruiz v. United States*, 378 F.3d 1229, 1231

n.3 (11th Cir. 2004) (stating "if the plaintiffs' allegations of deceit are essential to

their intentional infliction of emotional distress claim, we lack jurisdiction under

---

[5] The Court does agree that if Michtavi's claim falls within the scope of § 2680(h), it is not saved by the exception for intentional torts committed by an "investigative or law enforcement officer."  As the Magistrate Judge correctly notes, this exception applies only to the torts of such officers committed during searches, seizures, and arrests.  *See Pooler v. United States*, 787 F.2d 868, 872 (3d Cir. 1986).  No such conduct is at issue in this case.

the FTCA to entertain that claim"); *Aversa v. United States*, 99 F.3d 1200, 1207

(1st Cir. 1996) ("We agree with the district court ... that the claim[] for intentional

infliction of emotional distress ... through 'verbal abuse and slander' also 'arose

out of' slander within the meaning of 28 U.S.C. § 2680(h)."); *Metz v. United

States*, 788 F.2d 1528, 1534 (11th Cir.), *cert. denied*, 479 U.S. 930 (1986) (holding

"a cause of action which is distinct from one of those excepted under § 2680(h)

will nevertheless be deemed to 'arise out of' an excepted cause of action when the

underlying governmental conduct which constitutes an excepted cause of action is

'essential' to plaintiff's claim").

Michtavi attempts to characterize his claim as a battery, but this analogy is

plainly inapt.  *See C.C.H. v. Philadelphia Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa.

2008) ("A battery is defined as a harmful or offensive contact with the person of

another.").  Although the actions of the inmates who allegedly took advantage of

Michtavi constitute misrepresentation or deceit, the actions of the prison officials

are not analogous to any of the tort theories enumerated in § 2680(h).  Michtavi

alleges that officials failed to prevent harm to him and failed to properly

investigate afterwards.  These are allegations of negligence, and therefore,

Michtavi's intentional infliction of emotional distress claim is not barred by §

2680(h).[6]

Michtavi, however, has failed to establish the required elements of an

intentional infliction of emotional distress claim.  Under Pennsylvania law, "[o]ne

who by extreme and outrageous conduct intentionally or recklessly causes severe

emotional distress to another is subject to liability for such emotional distress."[7]

*Hoy v. Angelone*, 720 A.2d 745, 753 (Pa. 1998) (quoting Restatement (Second) of

Torts §46(1) (1965)).  "The conduct must be so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized society.  Described

another way, it has not been enough that the defendant has acted with intent which

is tortious or even criminal, or that he has intended to inflict emotional distress, or

_____

[6] It is, of course, somewhat paradoxical to find that a plaintiff's *intentional* tort claim is
not barred because it is based on *negligent* conduct, but the government employee's lack of
intent goes to whether the plaintiff has made out the elements of the claim, as defined by state
law, not whether the claim is barred by § 2680(h).

[7] The Pennsylvania Supreme Court has not expressly recognized a cause of action for
intentional infliction of emotional distress, but has consistently held that, if this cause of action
were recognized, the Restatement would set forth the minimum elements necessary to state such
a claim.  *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000); *Hoy*, 720 A.2d
at 753 n.10; *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 989 (Pa. 1987); *but see
Kazatsky*, 527 A.2d at 995 (Larsen, J. concurring) ("To paraphrase Shakespeare – the majority
doth protest too much, methinks. To measure appellants' cause of action according to the
standards set forth in section 46 of the Restatement (Second) of Torts and to purport to establish
what evidence is required to prove an injury pursuant to section 46 is to adopt section 46 in this
jurisdiction, in spite of what the majority states to the contrary.").

even that this conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* at 754 (citations omitted). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson v. Caparelli*, 625 A.2d 668, 671-72 (Pa. Super. Ct. 1993).

In this case, Michtavi has not stated these required elements. First, Michtavi does not allege that any government employee acted intentionally. The closest he comes to doing so is the allegation, based solely on the fact that another inmate was able to steal his legal papers, that prison officials were engaged in "some kind of funny business." As discussed above, Michtavi's claims sound only in negligence. Moreover, Michtavi has not alleged anything close to the extreme and outrageous conduct that would give rise to a claim for intentional infliction of emotional distress. Michtavi's allegations that prison officials made him depressed by failing to prevent other inmates from attempting, unsuccessfully, to frame him and from conning him out of money do not rise to the level of the few types of conduct Pennsylvania courts have found to provide the basis for a claim for intentional infliction of emotional distress. *See, e.g.*, *Hoy*, 720 A.2d at 754 (collecting cases); *Johnson*, 625 A.2d at 672 (priest's sexual abuse of alter boy);

18

*Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. Ct. 1989) (defendant deliberately vented highly radioactive steam on plaintiff and attempted to conceal overexposure to radiation).  Michtavi has not stated a claim for intentional infliction of emotional distress.

### 3.    Negligent Infliction of Emotional Distress

Michtavi has also failed to state a claim for negligent infliction of emotional distress.  Under Pennsylvania law, "the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios:  (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."  *Toney v. Chester County Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008) (citing *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa. Super. Ct. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001).  Michtavi's allegations in this case do not fit into of any these scenarios, and therefore, he has failed to state a negligent infliction of emotional distress claim.

Moreover, regardless of the factual scenario under which such a claim proceeds, "[i]n all cases, a Plaintiff who alleges negligent infliction of emotional

distress must suffer *immediate* and *substantial* physical harm." *Doe*, 745 A.2d at

28 (emphasis in original); *see also Redland Soccer Club, Inc. v. Dep't of the Army*,

55 F.2d 827, 848 (3d Cir. 1995).  As discussed above, Michtavi does not allege

that he suffered any physical injury, let alone an immediate and substantial one.

For this additional reason, his negligent infliction of emotional distress claim must

be dismissed.

### 4.    Negligence

As noted above, Michtavi's claims proceed essentially on a negligence

theory.  Therefore, although the parties and the Magistrate Judge did not address a

separate negligence claim, the Court will liberally construe Michtavi's complaint

as containing such a cause of action.  Michtavi has also failed to state a negligence

claim, however.[8]

"To establish a cause of action in negligence, the plaintiff must demonstrate

that the defendant owed a duty of care to the plaintiff, the defendant breached that

---

[8] The parties and the Magistrate Judge did address the elements of negligence in conjunction with Michtavi's negligent infliction of emotional distress claim, and the Court agrees with the Magistrate Judge's conclusion that that claim must be dismissed because Michtavi's allegations do not establish the elements of negligence.  (Doc. 62 at 22-29.)  *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. Ct. 2000) (holding that "absent a finding of negligence, the negligent infliction of emotional distress claim cannot survive").

duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an

actual loss or damage." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

As to the first element, 18 U.S.C. § 4042 provides that the Bureau of Prisons

will "provide suitable quarters and provide for the safekeeping, care, and

subsistence of all persons charged with or convicted of offenses against the United

States." As the United States concedes, this language establishes that the BOP has

a duty to those in its care. *See Garcia v. McArdle*, C.A. No. 4:06-CV-1533, 2008

WL 4415590, at *13 (M.D. Pa. Sept. 25, 2008). That duty of care is one of

ordinary diligence to keep prisoners safe from harm. *Banks v. Roberts*, C.A. No.

1:06-CV-1232, 2007 WL 1574771, at *9 (M.D. Pa. May 31, 2007) (citing *Turner

v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987)). "The United States, however, is

'not an insurer of the safety of a prisoner.'" *Belcher v. United States*, C.A. No.

4:03-CV-1252, 2007 WL 2155696, at *3 (M.D. Pa. July 25, 2007) (quoting *Hossic

v. United States*, 682 F. Supp. 23, 25 (M.D. Pa. 1987)); *see also Miller*, 679 F.

Supp. at 443 ("It is unreasonable to expect that the authorities can make a

penitentiary a risk-free institution.").

As to the second element, Michtavi makes no allegations upon which it

could be found that prison officials "deviated from the general standard of care

expected under the circumstances." *Martin*, 711 A.2d at 461. "In FTCA suits

21

brought by inmates alleging assaults by other inmates, a breach of the duty of

ordinary care usually requires a showing that correctional officials knew of a

potential problem between the two inmates prior to the assault.  In other words,

there must be knowledge on the part of such officers in charge that such injuries

will be inflicted, or good reason to anticipate such, and following that, there must

be a showing of negligence on the part of these officials in failing to prevent the

injury."  *Macias v. United States*, C.A. No. 05-1445, 2006 WL 1843111, at *2

(D.N.J. June 30, 2006) (citations omitted); *see also Miller*, 679 F. Supp. at 443

(stating "the duty imposed upon a jailer vis a vis his prisoner is 'to exercise

reasonable care and diligence to protect the prisoner from danger, known to or

which might reasonably be apprehended by him"); *Hossic*, 682 F. Supp. at 25

(same).  Michtavi does not allege that prison officials had any knowledge or reason

to anticipate the actions of the other inmates at issue or that prison authorities had

any reasonable opportunity to prevent such harm.  Michtavi simply makes the

conclusory allegation that "it is inconceivable" that other inmates took advantage

of him without the complicity or incompetence of prison staff.  In addition, despite

his equally unsupported and conclusory allegation of a "cover-up", the complaint

itself makes clear that prison officials responded to these incidents by

investigating, disciplining the offending inmates, and retrieving Michtavi's

property.  The allegations of the complaint do not demonstrate any breach of duty by prison officials.

As to the third element, even assuming a breach of duty by prison officials, Michtavi has failed to sufficiently allege that such a breach "proximately caused actual harm."  *Martin*, 711 A.2d at 461.  "It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation....  [E]ven when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury."  *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. Super. Ct. 2005) (citation omitted).  Mere "but-for" causation is not enough.  *See Mahon v. W.C.A.B. (Expert Window Cleaning & State Workers' Ins. Fund)*, 835 A.2d 420, 428 (Pa. Commw. Ct. 2003).  Rather, a plaintiff must demonstrate that the defendant's wrongful act "was a substantial factor in bringing about the plaintiff's harm."  *Lux*, 887 A.2d at 1286.  "[T]he court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of."  *Id.* at 1287.  Factors for the court to consider in determining whether an actor's conduct is a substantial factor in bringing about

harm to another are:  "(a) the number of other factors which contribute in

producing the harm and the extent of the effect which they have in producing it; (b)

whether the actor's conduct has created a force or series of forces which are in

continuous and active operation up to the time of the harm, or has created a

situation harmless unless acted upon by other forces for which the actor is not

responsible; and (c) lapse of time."  *Id.* at 1287.

The allegations of the complaint do not demonstrate that the actions or

inactions of prison officials were a substantial factor in bringing about Michtavi's

depression.  Rather, it is clear that the most significant factors in bringing about

Michtavi's purported emotional distress were the actions of the other inmates.

Undoubtedly, another significant factor in producing such harm is the 240-month

federal sentence Michtavi is currently serving.  *See United States v. Michtavi*, 225

Fed. Appx. 857 (11th Cir.), *cert. denied.*, 128 S. Ct. 340 (2007).  The wrongful acts

of prison officials, if any, are much less significant than these factors, and

Michtavi's purported injuries could not have been foreseen as the natural and

probable outcome of such actions.  Because the allegations of the complaint do not

establish breach or causation, Michtavi has failed to state a negligence claim.

### 5.    Discretionary Function Exception

Although the issue was unaddressed by the parties or the Magistrate Judge, the Court finds that Michtavi's FTCA claim must be dismissed for the additional reason that it is barred by the discretionary function exception, another of the limitations on the United States' waiver of sovereign immunity.

Under that exception, the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim based upon an act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). A two-part inquiry guides the application of the discretionary function exception:

> First, a court must determine whether the act involves an element of judgment or choice. The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. Second, even if the challenged conduct involves an element of judgment, the court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Mitchell v. United States*, 225 F.3d 361, 363-64 (3d Cir. 2000) (citations and internal punctuation omitted).

Courts within this circuit and others have uniformly held that federal prisoners' FTCA claims for injuries by fellow inmates are barred by the discretionary function exception. *See, e.g.*, *Donaldson v. United States*, 281 Fed. Appx. 75, 76-78 (3d Cir. 2008); *Castillo v. United States*, 166 Fed. Appx. 587, 589 (3d Cir. 2006); *Baker v. United States*, C.A. No. 05-147, 2006 WL 3717382, at *6 (W.D. Pa. Dec. 14, 2006); *Macias*, 2006 WL 1843111, at *3-4; *Redmond v. United States*, C.A. No. 4:04-CV-231, 2006 WL 709347, at *3-4 (M.D. Pa. Mar. 20, 2006); *Graham v. United States*, C.A. No. 97-1590, 2002 WL 188573, at *4 (E.D. Pa. Feb. 5, 2002).  While prison officials have a statutory duty to provide for the "safekeeping" of inmates, 18 U.S.C. § 4042, this statute leaves the implementation of these duties to the discretion of prison officials, and "how best to protect one inmate from the threat of attack by another is of the kind that the discretionary function exception was designed to shield." *Donaldson*, 281 Fed. Appx. at 77. Because it is barred by the discretionary function exception, Michtavi's FTCA claim must be dismissed for lack of subject matter jurisdiction

## IV.   CONCLUSION

For the foregoing reasons, the Court will adopt the Magistrate Judge's recommendation that Michtavi's second amended complaint be dismissed. Because the essential allegations of the complaint fail to state a claim upon which

relief can be granted, and because Michtavi has already been given multiple

opportunities at amendment, further amendment would be futile, and therefore,

dismissal will be with prejudice.  An appropriate order will be entered.